UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRED SAHADI,<br><br>Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL INSURANCE, LIBERTY MUTUAL FIRE INSURANCE COMPANY, and LIBERTY GUARD INSURANCE COMPANY,<br><br>Defendants. | Case No. 18-CV-04061-LHK<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 37 |

Plaintiff Fred Sahadi ("Plaintiff") brings the instant suit against Liberty Mutual Insurance, Liberty Mutual Fire Insurance Company, and Liberty Guard Insurance Company (collectively, "Defendants"). Liberty Mutual Fire Insurance Company asserts that Liberty Mutual Insurance and Liberty Guard Insurance Company have never existed and do not exist, and that the two entities were thus improperly sued by Plaintiff. *See* ECF No. 48. Only Liberty Mutual Fire Insurance Company ("Liberty") filed the instant motion for summary judgment. ECF No. 37 ("Mot"). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Liberty's motion for summary judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiff was covered by an insurance policy (the "Policy") issued by Liberty that provided underinsured motorist coverage with a limit of $500,000. *See* ECF No. 43, Ex. A. at 11. The Policy dictated that Liberty would pay compensatory damages to Plaintiff if Plaintiff suffered bodily injury caused by an underinsured motorist. *See id.* at 36. The Policy contained a provision that required Plaintiff to cooperate with Liberty "in the investigation, settlement or defense of any claim or suit." *Id.* at 35. The insurance policy outlined various other requirements for Plaintiff to meet as a condition of coverage, such as the requirement that Plaintiff authorize Liberty to obtain medical reports and other records pertinent to a claim. *See id.* The Policy also contained a provision allowing either Plaintiff or Liberty to demand binding arbitration to assess Plaintiff's entitlement to underinsured motorist coverage as well as the amount of policy benefits owed to Plaintiff. *See id.* at 38–39.

On January 19, 2015, while the Policy was in effect, Plaintiff was rear-ended by another vehicle and pushed into a stopped vehicle ahead of him. ECF No. 1-1, Ex. A ("Compl.") ¶¶ 6, 7. Plaintiff declined medical attention and chose to leave the scene, but Plaintiff eventually began to experience pain that Plaintiff attributed to the accident. *See id.* ¶ 9. Plaintiff consequently pursued a claim against the driver who rear-ended him. *See id.* ¶ 10. Geico, the other driver's insurer, paid its policy limit of $15,000 to Plaintiff on June 10, 2015. *Id.*

At some point before May 21, 2015, Plaintiff retained an attorney named Todd Davis to represent him in connection with Plaintiff's insurance claim. *See* ECF No. 39-6 ("Boos Decl.") Ex. A at 44:15–17. On June 8, 2015, Davis contacted Liberty. ECF No. 41 ("Schwartz Decl.") ¶ 5. Davis informed Liberty that his office had been retained to represent Plaintiff in connection with personal injuries Plaintiff sustained in the accident. *Id.* A Liberty property adjuster then contacted Plaintiff, and Plaintiff informed the Liberty property adjuster that Plaintiff intended to use the Policy's underinsured motorist bodily injury coverage to pay for back surgery that Plaintiff needed. *Id.* ¶ 6. On July 6, 2015, Mathieu Schwartz, a Liberty underinsured motorist adjuster,

2

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

was assigned to Plaintiff's claim. *Id.* ¶ 7. Over the following months, Schwartz sent numerous letters to Davis that went unanswered. *Id.* ¶ 19. Indeed, Schwartz sent letters dated July 6, 2015, August 21, 2015, September 10, 2015, October 5, 2015, and November 2015, and made various phone calls in an attempt to reach Davis over this same period, but Davis never responded. *See id.* ¶¶ 11–13, 16–20.

On January 11, 2016, Davis contacted Schwartz and informed Schwartz that Plaintiff had retained the Shea & Shea law firm to handle the matter, and Davis explained that Davis was no longer involved. *Id.* ¶ 21. Plaintiff testified that Plaintiff retained the Shea & Shea attorneys "well before December 30th," 2015, *see* Boos Decl. Ex. A at 75:14–15, and that Plaintiff believed that Plaintiff retained the Shea & Shea attorneys at some point in "October" 2015, *see id.* at 76:10–11. Plaintiff then executed a fixed contingency fee agreement with the Shea & Shea law firm on January 22, 2016, awarding the firm either 33% or 40% of Plaintiff's net recovery from Liberty, depending on the timing of recovery. *See id.* at Ex. 15.

Davis testified that Davis had represented Plaintiff in connection with the Policy claim until the Shea & Shea law firm was hired. *See id.* Ex. B at 53:14–17. On January 22, 2016, Plaintiff executed a fixed contingency fee agreement with the Shea & Shea law firm awarding the firm either 33% or 40% of Plaintiff's net recovery from Liberty, depending on the timing of recovery. *See id.* Ex. A at Ex. 15.

On February 9, 2016, Mark O'Connor, an attorney with Shea & Shea, sent Schwartz a letter indicating that O'Connor represented Plaintiff. Schwartz Decl. ¶ 22. Schwartz responded that same day by sending a letter to O'Connor that requested information concerning Plaintiff's insurance claim, such as a medical authorization form and medical records. *Id.* ¶ 23 Ex. K. On March 18, 2016, Schwartz received a letter from O'Connor that indicated that Plaintiff's medical records were voluminous and that O'Connor would send them to Schwartz during the following week. *Id.* ¶ 24, Ex. L. O'Connor also said that O'Connor would include a settlement demand and a formal demand for arbitration pursuant to the Policy. *Id.*

On April 13, 2016, Schwartz had not heard from O'Connor, so Schwartz called

3

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1  O'Connor's office and left a message once again requesting the information. *Id.* ¶ 25.

2  On April 14, 2016, Schwartz received a letter from O'Connor, alongside 4,600 pages of documents. *Id.* ¶ 26. O'Connor's letter demanded the full remaining $485,000 underinsured motorist policy limit available under the Policy. *Id.* ¶ 27 Ex. M. O'Connor's letter indicated that this offer would expire on May 12, 2016. *Id.* O'Connor's letter also demanded arbitration, which triggered the Policy's arbitration provision and initiated arbitration proceedings. *Id.*; ECF No. 39-5 ("Nelch Decl.") ¶¶ 3, 4.

Schwartz retained a nurse to review the medical records. *Id.* ¶ 28. The nurse reported that the records were voluminous and requested additional time to review them and to prepare a report for Schwartz. *Id.* ¶ 29. Schwartz called O'Connor on April 29, 2016 and requested an extension until June 10, 2016 to review the material and respond to the demand. *Id.* ¶ 30. O'Connor granted Liberty an extension until May 27, 2016 to respond. Compl. ¶ 15.

On May 24, 2016, Schwartz finished his review of the nurse's report. Schwartz Decl. ¶ 35. On May 25, 2016, Schwartz contacted O'Connor, and Schwartz explained that Liberty could neither accept nor reject the $485,000 offer. *Id.* ¶ 36. Schwartz believed that the surgery that formed the basis of Plaintiff's claim might have been necessitated by a preexisting medical condition, and not the automobile accident. *Id.* ¶ 35. On May 25, 2016, Schwartz also requested additional information from Plaintiff, including medical records relating to a neurosurgeon to whom Plaintiff was referred in 2005 (a decade before Plaintiff was rear-ended on January 19, 2015), previous imaging of Plaintiff's neck and back, and all records from another one of Plaintiff's doctors. *Id.* ¶ 36, Ex. Q.

On June 15, 2016, Schwartz received a letter from O'Connor that provided some of the information Schwartz requested. *Id.* ¶ 38, Ex. S. The letter indicated that the imaging records would be forthcoming. *Id.* The letter also asserted that Plaintiff never saw a neurosurgeon in 2005. *Id.* Schwartz replied on the following day, and noted that the medical records Schwartz had previously received seemed to indicate that Plaintiff was in fact referred to a neurosurgeon in 2005. *Id.* ¶ 39, Ex. T. Schwartz also requested photographs and repair estimates for other

4

vehicles involved in the accident, alongside a signed medical authorization so that Liberty could obtain medical records on its own. *Id.*

On June 21, 2016, Schwartz received the imaging materials that Schwartz had requested, and Schwartz retained a doctor to review the materials. *Id.* ¶ 40, Ex. U.

On June 23, 2016, Shea & Shea made an offer of judgment in the ongoing arbitration proceedings for $485,000. *Id.* ¶ 41, Ex. V. This offer of judgment was followed by a letter sent to Schwartz by a Shea & Shea attorney, which indicated that the attorney had reviewed the medical records and understood why Schwartz believed that Plaintiff had seen a neurosurgeon in 2005. *Id.* ¶ 42, Ex. W. Nevertheless, the Shea & Shea attorney asserted that there was "no evidence in [her] possession" that supported the conclusion that Plaintiff ever saw a neurosurgeon in 2005. *Id.* The Shea & Shea attorney also indicated that a medical authorization would be forthcoming. *Id.* Schwartz received a signed medical authorization on June 24, 2016, alongside various vehicle photographs that Schwartz had requested. *Id.* ¶ 44, Ex. X. However, the medical authorization was limited to only two doctors and therefore did not permit Liberty to review medical records from before the accident. *Id.* ¶ 44.

On July 7, 2016, Schwartz received a written report from the doctor Schwartz enlisted to review Plaintiff's imaging records. *Id.* ¶ 45. This report indicated that the imaging records did not show any changes caused by the accident. *Id.* Thus, on July 11, 2016, Schwartz sent O'Connor a letter that indicated that Liberty could still neither accept nor reject the $485,000 offer. *Id.* ¶ 47, Ex. Z.

At the end of July 2016, Schwartz left Liberty for another job, *id.* ¶ 49, and Plaintiff's file was transferred to Scott Crump, another Liberty adjuster, for processing. ECF No. 43 ("Crump Decl.") ¶ 6. While the matter continued in arbitration, Crump reviewed the file and agreed that Liberty could not accept the $485,000 offer because of questions about the impact of preexisting conditions on Plaintiff's claimed symptoms. *Id.* ¶ 7.

At some point in early November, around November 7, 2016, Crump contacted O'Connor. ECF No. 45-1 ("O'Connor Decl.") ¶ 19. Crump asked whether Plaintiff would accept an award

5
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

below the $485,000 policy limit. *Id.* O'Connor replied that O'Connor lacked authority to reduce the demand amount, but O'Connor offered to convey any concrete offers to Plaintiff. *Id.* Crump indicated that an offer would be forthcoming. *Id.*

As arbitration proceeded, the parties exchanged discovery requests, and Liberty retained a neurosurgeon to assist in its evaluation of Plaintiff's claim. Nelch Decl. ¶¶ 6, 9. In the meantime, on January 12, 2017, O'Connor sent a letter proposing an arbitrator and making a settlement demand of $750,000. *Id.* ¶ 10. Several weeks later, Crump participated in a conference call with the neurosurgeon Liberty had retained, in which the neurosurgeon opined on Plaintiff's case. *Id.*

Between January 30, 2017 and February 7, 2017, Liberty's arbitration attorney took Plaintiff's deposition. *Id.* ¶ 12. On January 31, 2017, Liberty's arbitration attorney also requested that the parties participate in mediation, which Liberty offered to finance. *Id.* ¶ 13, Ex. I. O'Connor rejected this request and asserted that Liberty should "pay the remaining policy limits." *Id.* ¶ 14, Ex. J. O'Connor imposed a deadline of February 8, 2017 for payment. *Id.*

On February 8, 2017, Crump completed a written evaluation of Plaintiff's claim and a request for settlement authority. Crump Decl. ¶ 21. Crump concluded that the claim had a valuation range of $348,754.01 to $490,225.69. *Id.* Crump believed that the opinions of the doctors that Liberty consulted suggested a claim value at the lower end of the range, but Crump also believed that Plaintiff had appeared credible and sympathetic at his deposition. *Id.* Accordingly, Crump requested authority to offer settlement up to the Policy's full $485,000 limit. *Id.* Because this amount exceeded Crump's authority, Crump participated in a conference call with several supervisors. *Id.* ¶ 22. Crump's supervisors approved Crump's request to settle up to the policy limit. *Id.* Later in the same day, on February 8, 2017, Crump spoke to O'Connor and the two agreed on a settlement of the full $485,000 policy limit. *Id.* ¶ 23. Liberty proceeded to pay the full $485,000 policy limit to Plaintiff. *Id.*

On February 16, 2017, Plaintiff notified his excess insurer of Liberty's settlement. ECF No. 45-1 ("O'Connor Decl.") ¶ 27. Over the following months, the excess insurer took Plaintiff's deposition on two different occasions. *Id.* ¶ 29. Over a year later, on April 30, 2018, Plaintiff's

6

excess insurer paid Plaintiff an additional $618,750 award upon the completion of mediation. *Id.* ¶ 30. In the course of these proceedings, the excess insurer expressed many of the same concerns Liberty had expressed, namely whether Plaintiff's symptoms were caused by the accident or Plaintiff's preexisting conditions. *Id.* ¶ 29.

### B. Procedural History

On May 25, 2018, Plaintiff filed an action in the Superior Court of California for Santa Clara County. ECF No. 1 ¶ 1. The complaint alleged claims for the breach of the covenant of good faith and fair dealing, fraud, and breach of California Insurance Code § 790.03. Compl. ¶¶ 46–69. The complaint named the following entities as defendants: Liberty Mutual Fire Insurance Company ("Liberty"); Liberty Mutual Insurance Company; Matthieu Schwartz; and Scott Crump. *Id.* ¶ 1. The complaint also named as defendants the two allegedly fictional entities, Liberty Mutual Insurance and Liberty Guard Insurance Company. *Id.* Finally, the complaint included unnamed Doe employees of Liberty. *Id.*

Liberty removed the action to federal court on July 6, 2018, based on this Court's diversity jurisdiction under 28 U.S.C. § 1332(a). *See* ECF No. 1 ¶ 4.

On August 14, 2018, the parties stipulated that Matthieu Schwartz and Scott Crump would be dismissed from the action with prejudice, and that Plaintiff's cause of action for breach of California Insurance Code § 790.03 would also be dismissed with prejudice. ECF No. 17.

Liberty Mutual Insurance Company and Liberty filed a motion to dismiss in part Plaintiff's complaint on August 10, 2018. *See* ECF No. 15. On November 20, 2018, the Court granted the motion to dismiss without prejudice because Plaintiff failed to oppose it. ECF No. 27. The Court instructed Plaintiff to file an amended complaint that cured the deficiencies identified in the motion to dismiss within 30 days. *Id.* The Court admonished Plaintiff that failure to file an amended complaint before the deadline would result in dismissal of the challenged claims with prejudice. *Id.* Plaintiff failed to respond within thirty days. Accordingly, on December 21, 2018, the Court granted the motion to dismiss with prejudice. ECF No. 28. The Court noted that as a result of the dismissal, the only claim that remained in the case was the breach of the covenant of

7

good faith and fair dealing against Liberty and the two allegedly fictional entities, Liberty Mutual Insurance and Liberty Guard Insurance Company. *Id.*

On June 20, 2019, Liberty filed the instant motion for summary judgment. *See* Mot. On July 10, 2019, Plaintiff opposed the motion, *see* ECF No. 46 ("Opp."), and on July 12, 2019, Liberty replied, *see* ECF No. 47 ("Reply").

## II.   LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. However, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the Court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to

8
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

1  judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

2  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**III. DISCUSSION**

Plaintiff's sole remaining claim is that Defendants breached the covenant of good faith and fair dealing under California law. *See* Compl. ¶¶ 46–52. A claim for the breach of the covenant of good faith and fair dealing requires Plaintiff to show that (1) benefits due under the Policy were wrongfully withheld, and (2) the reason for withholding the benefits was "unreasonable" or "without proper cause." *CalFarms Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 286 (2005). The existence of a "genuine dispute" between the insurer and the insured means that the withholding of benefits due under a policy is not unreasonable. *Rappaport-Scott v. Interinsurance Exchange of Auto. Club*, 146 Cal. App. 4th 60, 86 (2010). The Court may conclude as a matter of law that an insurer's conduct was not unreasonable. *See, e.g.*, *Maynard v. State Farm Mut. Auto. Ins. Co.*, 499 F. Supp. 2d 1554, 1161–65 (C.D. Cal. 2007).

Plaintiff's theory is that Defendants improperly delayed payment of the $485,000 policy benefits in bad faith, even after Defendants knew that Plaintiff was entitled to those benefits. *Id.* Plaintiff claims that this breach occurred beginning on May 27, 2016, when Liberty declined to accept O'Connor's request that Liberty award Plaintiff the full $485,000 in policy limits. *See* Opp. at 18. Plaintiff asserts that Plaintiff is entitled to the following categories of damages as a result of the alleged breach: (1) attorney's fees and costs; (2) loss of use fees relating to Plaintiff's missed investment opportunities; (3) damages for emotional distress; and (4) punitive damages. *See* Compl. at 16–17.

In its motion for summary judgment, Liberty argues that each of Plaintiff's damages theories is unsupported by the record. Mot. at 15–20. Liberty asserts that Plaintiff's claim for

9
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

attorney's fees and costs fails because there is no genuine dispute of material fact that could show that Liberty's allegedly tortious behavior proximately caused Plaintiff to incur the requested attorney's fees and costs. *See id.* at 15–17. Liberty also argues that Plaintiff's claim for loss of investment income is fatally speculative, and that it was not adequately disclosed pursuant to Fed. R. Civ. P. 26(a) in any event. *See id.* at 17–18. Liberty argues that because of Plaintiff's failure to show financial loss, Plaintiff also may not recover for damages for emotional distress. *See id.* at 19. Finally, Liberty argues that Plaintiff has not produced a genuine issue of material fact sufficient to meet the heightened standard for punitive damages, and that punitive damages are unavailable because Plaintiff is not entitled to compensatory damages. *See id.* at 19; Reply at 10. Finally, Liberty also argues more generally that there is no genuine issue of material fact concerning whether Liberty breached the implied covenant of good faith and fair dealing under California law.

The Court agrees with Liberty that Plaintiff may not recover under any of the categories of damages Plaintiff asserts. Accordingly, the Court need not reach Liberty's final argument regarding whether Liberty breached the implied covenant of good faith and fair dealing.

The Court addresses each of Plaintiff's requested categories of damages in turn. Because this case is before the Court on diversity jurisdiction, the Court must apply California law to assess the validity of the damages theories asserted by Plaintiff. *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 644 (9th Cir.1997) ("In a diversity case, we decide issues of state law as we believe the state's highest court would decide them . . . . Because this diversity case arose in California, we apply California law." (internal citation omitted)).

**A. *Brandt* Fees and Costs**

Plaintiff brings a claim for the breach of the covenant of good faith and fair dealing. Pursuant to this claim, Plaintiff seeks to recover the attorney's fees and costs that Plaintiff expended in the course of recovering the $485,000 in policy benefits due under the Policy. The California Supreme Court has explained that "[b]ecause breach of the implied covenant is actionable as a tort, the measure of damages for tort actions applies and the insurance company

10

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

generally is liable for 'any damages which are the proximate result of that breach.'" *PPG Industries, Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315 (1999) (quoting *Neal v. Farmers Ins. Exchange*, 21 Cal. 3d 910, 925 (1978)). "Proximate cause involves *two* elements." *Id.* One element is "cause in fact," which requires a plaintiff to show that an insurer's breach of the implied covenant of good faith and fair dealing was "a necessary antecedent" of a plaintiff's damages. *See id.*

Under *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), the California Supreme Court declared that these damages may include certain attorney's fees "proximately caused by defendant's breach of its duty to deal in good faith." *Id.* at 819 (quotation omitted). The *Brandt* court stressed the importance that the plaintiff seeking attorney's fees as damages for the breach of the covenant of good faith and fair dealing demonstrate a "causal relation between the defendant's tortious breach of the covenant of good faith and the employment of counsel." *See id.* at 820 n.8.

Accordingly, California courts have interpreted *Brandt* to "authoriz[e] the recovery of only those fees incurred *but for the insurer's tortious conduct*." *Burnaby v. Standard Fire Ins. Co.*, 40 Cal. App. 4th 787, 792 (1995) (emphasis added); *see also Bostick v. Atlantic Mutual Insurance Company*, 2008 WL 11338162, at *2 (C.D. Cal. June 25, 2008) (noting that "*Brandt* fees are only available for fees that would not have been incurred *but for the insurer's tortious conduct*" (emphasis added)); *Unical Enterprises, Inc. v. American Ins. Co.*, 2005 WL 6133910, at *9 (C.D. Cal. Sept. 12, 2005) (same).

Moreover, Plaintiff concedes that under *Brandt*, Plaintiff may not recover the attorney's fees for litigating the instant action. Opp. at 17 ("For [Plaintiff], his *Brandt* damages occurred as part of the separate underlying claim . . . ."). This concession is required by law. *See Burnaby*, 40 Cal. App. 4th at 792 (explaining that the *Brandt* court "made it clear it was authorizing the recovery of only those fees incurred to obtain the policy benefits that would not have been incurred but for the insurer's tortious conduct and *not* the fees incurred in prosecuting the tortious breach of covenant claim" (emphasis in original)). Thus, Plaintiff's possible recovery under *Brandt* is limited to the attorney's fees that Plaintiff expended to recover the $485,000 from

11

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Liberty.

In this case, Plaintiff simply states that Plaintiff "incurred $160,240.27 in attorneys' fees . . . to recover the [underinsured motorist] benefits on the Liberty Mutual policy." O'Connor Decl. ¶ 36. Plaintiff does not provide any description of work done, method of calculation, or identification of billers. Opp. at 18. For example, it is unclear whether Plaintiff's attorney's fees request includes fees incurred by Davis, who testified that Davis served as Plaintiff's attorney in connection with the Policy claim "until the Shea & Shea firm took over" at some point in the fall of 2015. *See* Boos Decl. Ex. B at 53:14–17.

In any event, Plaintiff does not satisfy the causation requirements of *Brandt*. First, as explained above, Plaintiff alleges that Liberty's breach of the covenant of good faith and fair dealing began on May 27, 2016, after which point Liberty allegedly unreasonably delayed payment of the $485,000 to Plaintiff. *See* Opp. at 18 ("For the purposes of *Brandt* fees, the bad faith began on May 27, 2016.").

Plaintiff does not show that Liberty's alleged breach of the covenant of good faith and fair dealing beginning on May 27, 2016 compelled Plaintiff "to retain an attorney to obtain the benefits due under" the Policy months before the alleged breach. *See Brandt*, 37 Cal. 36 at 817. Instead, the record demonstrates that Plaintiff retained Davis more than a year earlier—at some point before May 21, 2015, *see* Boos Decl. Ex. A at 44:15–17. The record also demonstrates that Plaintiff retained the Shea & Shea attorneys at some point in the fall of 2015. Plaintiff testified that Plaintiff retained the Shea & Shea attorneys "well before December 30th," 2015, *see* Boos Decl. Ex. A at 75:14–15, and that Plaintiff believed that Plaintiff retained the Shea & Shea attorneys at some point in "October" 2015, *see id.* at 76:10–11. Plaintiff then executed a fixed contingency fee agreement with the Shea & Shea law firm on January 22, 2016, awarding the firm either 33% or 40% of Plaintiff's net recovery from Liberty, depending on the timing of recovery. *See id.* at Ex. 15. Thus, Plaintiff retained his attorneys more than four months before Liberty's alleged bad faith began on May 27, 2016.

Second, Plaintiff does not point to any attorney's fees that Plaintiff would not have

12

"incurred but for the insurer's tortious conduct." *Burnaby*, 40 Cal. App. 4th at 792. As discussed above, Plaintiff executed a fixed contingency fee agreement with the Shea & Shea law firm on January 22, 2016, awarding the firm either 33% or 40% of Plaintiff's net recovery from Liberty, depending on the timing of recovery.[1] *See* Boos Decl. Ex. A at Ex. 15. The record indicates that this fixed contingency fee agreement was never modified, *see id.* at 68:5–12.

Even if Liberty had paid the policy limit by the May 27, 2016 deadline that Plaintiff imposed—and therefore never allegedly breached the covenant of good faith and fair dealing in the first place—Plaintiff would have incurred exactly the same attorney's fees. Indeed, tellingly, Plaintiff's own expert report suggests that Plaintiff expended the same "attorney fees and costs" that he currently requests as of May 12, 2016, weeks before Plaintiff asserts that Defendants' bad faith conduct began on May 27, 2016. *See id.* Ex. D at 45 (indicating that Plaintiff expended $160,240 in attorney's fees as of May 12, 2016). Thus, the record indicates that Liberty's alleged bad faith did not serve as a "necessary antecedent" of any portion of the attorney's fees that Plaintiff incurred. *See PPG Indus, Inc.*, 20 Cal. 4th at 315.

The plaintiff "bears the burden of proving by a preponderance of the evidence both the existence and the amount of damages proximately caused by the defendant's tortious acts or omissions." *Cassim*, 33 Cal. 4th at 813. For this reason, on a motion for summary judgment, the moving party may discharge its burden by pointing to "an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, at which point the nonmoving party must identify with reasonable particularity the evidence that precludes summary judgment, *see Keenan*, 91 F.3d at 1279. If the nonmoving party fails to "discharge that burden—for example by remaining silent—its opportunity is waived and its case wagered." *Herron v. Peri*, 2014 WL 1917934, at *3 (D. Nev. May 13, 2014) (quoting *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992)).

---

[1] Because the attorney's fees that Plaintiff seeks represents an amount that is slightly below 33% of the $485,000 recovery, it appears that the 33% rate was the one ultimately applied to Plaintiff's recovery.

13
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Plaintiff has failed to satisfy the burden to show with reasonable particularity the evidence that either Plaintiff's decision to retain an attorney or the fact that Plaintiff incurred any attorney's fees was "proximately caused by defendant's breach of its duty to deal in good faith" as required by *Brandt*. *See Brandt*, 37 Cal. 36 at 819.

Plaintiff also seeks to recover approximately $3,279 in costs and expenses. *See* Opp. at 18. Costs and expenses incurred due to an insurer's tortious conduct are available at California law pursuant to the "same reasoning" as attorney's fees under *Brandt*: they represent "detriment proximately resulting from the insurer's bad faith, which detriment . . . includes those [costs and expenses] that were incurred to obtain the policy benefits and that would not have been incurred but for the insurer's tortious conduct." *White v. Western Title Ins. Co.*, 40 Cal. 3d 870, 890 (1985) (quoting *Brandt*, 37 Cal. 3d at 819); *see also Teleflex Med. Inc. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 2014 WL 12514885, at *9 (S.D. Cal. Mar. 28, 2014) ("[T]he Court finds that expert witness fees and costs are recoverable under state law as an element Plaintiff's compensatory damages related to the bad faith claim."). As with attorney's fees, this category does not include costs and expenses that a plaintiff incurs in bringing the tort action itself. *See Scottsdale Ins. Co. v. CNC Techs., LLC*, 2017 WL 10573982, at *3 n.1 (C.D. Cal. Aug. 15, 2017) ("*Brandt*, however, prohibits [counter-plaintiff] from receiving any fees or costs related to its bad faith counterclaim.").

Plaintiff's argument concerning costs and expenses suffers from the same flaw as Plaintiff's argument concerning attorney's fees. Plaintiff fails to point to evidence of a causal relationship between Liberty's alleged tortious conduct and the claimed costs and expenses. Most of the costs and expenses in the record predate May 27, 2016, the date that Plaintiff alleges Liberty's bad faith conduct began. *See* Boos Decl. Ex. H. For example, many of Plaintiff's costs appear to be associated with obtaining medical records in September 2015 and February 2016. *Id.*

Liberty argues that each of the remaining costs and expenses flows directly from the binding arbitration that Plaintiff himself requested in the April 12, 2016 letter sent to Liberty— once again, before Plaintiff alleges that Liberty's bad faith began on May 27, 2016. *See* Schwartz

14

Decl. Ex. M. Plaintiff fails to respond to this argument. Instead, Plaintiff simply asserts the amount of costs and expenses incurred. *See* O'Connor Decl. ¶ 36 ("Sahadi incurred $160,240.27 in attorneys' fees and $3,279.18 in expenses to recover the UIM benefits on the Liberty Mutual policy."). Accordingly, as with attorney's fees, the Court concludes that Plaintiff has not satisfied his burden to identify a genuine issue of material fact that, if resolved in Plaintiff's favor, would entitle Plaintiff to the claimed costs and expenses under *Brandt*.

Plaintiff has therefore not shown a genuine issue of material fact that could entitle Plaintiff to recover *Brandt* fees, costs, or expenses pursuant to his claim for breach of the covenant of good faith and fair dealing. The Court now proceeds to consider whether Plaintiff is entitled to recover loss of investment income damages.

**B. Loss of Investment Income Damages**

In his complaint, Plaintiff asserts that he is entitled to "interest permitted by law." Compl. at 16. Similarly, in his initial disclosure, Plaintiff lists "[i]nterest" as a category of damages to which he is entitled. Boos Decl. Ex. G. To the extent that Plaintiff's references to "interest" attempt to describe an entitlement to prejudgment interest, Liberty argues that these damages are unavailable to Plaintiff. According to Liberty, "even if there were damages that Plaintiff could recover, they would not be of the type that is 'certain or capable of being made certain' by computation," as required under California law to qualify for prejudgment interest. Mot. at 27 n.1; *see* Reply at 14 ("Plaintiff cannot recover prejudgment interest here, however, because Plaintiff's claim is for tortious breach of the implied covenant of good faith and fair dealing."); *see also* Cal. Civ. Code § 3287(a) (limiting entitlement to prejudgment interest to plaintiffs who may "recover damages certain, or capable of being made certain by calculation").

Plaintiff fails to respond to this argument. Accordingly, the Court finds that Plaintiff has waived any argument that Plaintiff is entitled to prejudgment interest. *See Recycle for Change v. City of Oakland*, 856 F.3d 666, 673 (9th Cir. 2017) (argument not developed in briefs has been waived); *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 919 (N.D. Cal. 2016) ("Generally . . . a partial response [in opposition to summary judgment] reflects a decision by a

15
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

party's attorney to pursue some claims or defenses and to abandon others." (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014))).

Instead, Plaintiff suggests that the references to "interest" point to a theory of loss of use damages that Plaintiff likens to lost profit. *See* Opp. at 22 ("Sahadi's claim of economic damages for loss of use of funds was reasonably disclosed. It was initial[ly] disclosed as 'interest' then further disclosed in answers to interrogatories dated January 11, 2019."); *id.* at 24 (likening Plaintiff's loss of use theory to a "lost profit inquiry"). Plaintiff's theory concerning loss of use damages appears to be that Plaintiff suffered a "loss of potential investment earnings" that would have been available to Plaintiff if Liberty had paid the policy limit earlier. Boos Decl. Ex. D; *see* Opp. at 19.

Liberty raises two arguments against the availability of recovery under this loss of investment income theory. First, Liberty argues that this category of loss of investment income damages is fatally speculative. *See* Mot. at 24. Second, and in any event, Liberty claims that Plaintiff did not disclose the theory sufficiently early to allow Liberty to conduct the relevant fact discovery. *See id.* The Court agrees with Liberty that the lost investment income theory is fatally speculative. Accordingly, the Court need not reach Liberty's argument that the theory was revealed too late in discovery and should be excluded.

As described above, under California law, where a breach of an implied covenant of good faith and fair dealing occurs, the insurer is "liable for any damages which are the proximate result of that breach." *Brandt*, 37 Cal. 3d at 817 (citations omitted). However, "[d]amages which are remote, contingent, or merely possible cannot serve as a legal basis for recovery." *Cal. Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 62 (1985); *see also Scott v. Pac. Gas & Electric Co.*, 11 Cal. 4th 454, 472 (1995) ("It is fundamental that [contract] damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." (quoting *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100, 104 (1989)); *Lueter v. California*, 94 Cal. App. 4th 1285, 1302 (2002) ("Whatever the proper measure of damages may be, in a given case, the recovery therefor is still subject to the fundamental rule that damages

16
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." (quoting *Frustuck v. Fairfax*, 212 Cal. App. 2d 345, 367–68 (1963)).

Plaintiff argues that loss of investment income damages are not fatally speculative because under California law, "while the fact of damages must be clearly shown, the amount need not be proved with the same degree of certainty as long as the court makes a reasonable approximation." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1443 (9th Cir. 1990). Liberty responds, however, that in this case, "it is both the *fact* and the *amount* of this claimed [loss of investment income] damage that is speculative." Reply at 10.

Another federal district court considered an argument nearly identical to the one Liberty raises. In *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, a plaintiff bringing a claim for the breach of the covenant of good faith and fair dealing claim against an insurer sought damages for the lost opportunity to invest insurance benefits and earn a return based on "industry average." *See U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 2013 WL 12143045, at *4 (C.D. Cal. Mar. 11, 2013), *reversed in part on other grounds by U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, 609 F. App'x 458 (9th Cir. 2015). Just as Liberty does here, the defendant moved for summary judgment on the basis that this theory of damages was "too speculative to create a triable issue of material fact." *Id.* The plaintiff in *U.S. Bank* had presented an expert report relying on an index of private equity returns to calculate potential lost investment income, but the court held that the plaintiff was required to present "more compelling evidence" than this. *Id.* According to the court, plaintiff "fail[ed] to present evidence of any investments it was forced to forgo due to a lack of funds." *Id.* Thus, the *U.S. Bank* court agreed with the defendant and granted summary judgment. *Id.* The Ninth Circuit left this decision untouched. *See U.S. Bank Nat'l Ass'n*, 609 F. App'x at 458–59.

In this case, Plaintiff's damages theory is every bit as speculative. The sole support for Plaintiff's theory comes from Plaintiff's expert report, which calculated potential lost investment income by pointing to the S&P 500 index fund, Dow Jones index fund, and Nasdaq index fund during the relevant period. *See* Boos Decl. Ex. D. However, Plaintiff's expert did not know

17

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

whether Plaintiff had *ever* invested in an S&P 500 index fund, a Dow Jones index fund, or a Nasdaq index fund. *See id.* Ex. C, at 54:6–8, 54:22–24.

Plaintiff's expert also did not know whether Plaintiff would have invested any of the benefits Plaintiff received under the Policy had Plaintiff received them earlier, and the expert conceded that there are "countless other things that [Plaintiff] could have invested in" should he have in fact chosen to invest them. *See id.* at 61:23–62:4.

Moreover, there is no evidence that Plaintiff did in fact invest the policy benefits when Plaintiff received them. Furthermore, there is no evidence that Plaintiff would have invested the policy benefits if Plaintiff had received the policy benefits earlier.

There is also no evidence that Plaintiff has ever earned investment income from an S&P 500 index fund, a Dow Jones index fund, or a Nasdaq index fund, or any stocks for that matter. Plaintiff provides no evidence of his investing history whatsoever.

The California Supreme Court has held that "[t]he award of damages for loss of profits depends upon whether there is a satisfactory basis for estimating what the probable earnings would have been had there been no tort," and it held that if no such basis exists, recovery may be denied. *See Natural Soda Prod. Co. v. Los Angeles*, 23 Cal. 2d 193, 199 (1943). In this case, Plaintiff has failed to present evidence that provides a satisfactory basis for estimating any possible loss of investment income.

Accordingly, the Court concludes that the requested damages for lost investment income are too speculative to survive summary judgment. Plaintiff has failed to point to a genuine issue of material fact that would entitle him to receive damages for loss of investment income. The Court thus proceeds to consider the other categories of damages that Plaintiff seeks to recover.

**C. Other Damages Theories**

Finally, Plaintiff lists "general damages" and "punitive and exemplary damages" as categories of damages that Plaintiff is entitled to recover. *See* Compl. at 16–17.[2] The Court

---

[2] Plaintiff's complaint also lists the "costs of suit herein" and "such other and proper relief as the court deems just" as potential damages. Compl. at 17. However, Plaintiff did not include these

18

Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

addresses each category in turn.

### 1. Damages for Emotional Distress

Plaintiff indicates that his use of the phrase "general damages" consists of damages for emotional distress. *See* Boos Decl. Ex. A, at 144:22–25 ("Q: And the third category of damages being claimed are general damages, which I understand consist of claimed emotional distress? A: Correct.").

Plaintiff argues that he is entitled to damages for emotional distress because he also "incurred economic damages." Opp. at 20. Plaintiff concedes that in the absence of economic damages, Plaintiff may not recover damages for emotional distress. *Id.* ("Then, and only then, [when a plaintiff has incurred financial loss,] may the insured recover for emotional distress damages as well as the pecuniary loss." (quoting *Waters v. United Servs. Automobile Ass'n*, 41 Cal. App. 4th 1063, 1074 (1996)). The Court has concluded that Plaintiff has failed to create a genuine issue of material fact with respect to whether Plaintiff suffered financial loss in the form of *Brandt* fees and costs, or in the form of lost investment income. The Court must therefore also conclude that Plaintiff has failed to create a genuine issue of material fact with respect to whether Plaintiff is entitled to damages for emotional distress. *See Waters*, 41 Cal. App. 4th at 1074 ("Emotional distress damages are recoverable in a first party bad faith case only when the insured establishes financial loss.").

### 2. Punitive Damages

Plaintiff also argues that Plaintiff is entitled to punitive damages under California Civil Code § 3294 because Liberty acted with oppression, fraud, or malice in refusing to pay the policy benefits at an earlier date. *See* Opp. at 21. However, "California courts have long interpreted

---

damages in his initial disclosures, his interrogatory responses, or his summary judgment opposition briefing. Boos Decl. Ex. E (listing damages as consisting of "attorneys' costs ($3,279.18), attorneys' fees ($160,240.27), interest, general and punitive damages"); *id.* Ex. F (listing "financial detriment" as consisting of "*Brandt* damages in addition to the loss of use of the insurance funds paid"); *id.* Ex. G (listing damages as consisting of "Attorney's fees," "Attorney's costs," "Interest," "General damages," and "Punitive damages."); Opp. at 15–25 (listing damages). Accordingly, Plaintiff has abandoned any argument concerning other categories of damages. *Recycle for Change*, 856 F.3d at 673 (argument not developed in briefs has been waived).

19
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Section 3294 to require an award of compensatory damages, even if nominal, to recover punitive damages." *California v. Altus Fin. S.A.*, 540 F.3d 992, 1000 (9th Cir. 2008) (citing *Mother Cobb's Chicken Turnovers, Inc. v. Fox*, 10 Cal. 2d 203 (1937)). "California law requires the recovery of compensatory damages, even if nominal, to support the recovery of punitive damages." *Pajas v. Monterey*, 2016 WL 3648686, at *11 (N.D. Cal. July 8, 2016).

The Court has concluded that Plaintiff has failed to create a genuine issue of material fact with respect to whether Plaintiff is entitled to any compensatory damages. The Court must therefore also conclude that Plaintiff has failed to create a genuine issue of material fact with respect to whether Plaintiff is entitled to punitive damages. *See Pajas*, 2016 WL 3648686, at *12 ("Here, Plaintiffs fail to identify any actual or compensatory damages, even if nominal, that could serve as a predicate for the award of punitive damages . . . .").

## IV. CONCLUSION

In sum, Plaintiff has failed to create a genuine issue of material fact concerning his entitlement to relief under any of his theories of damages. *See, e.g.*, *Badame v. J.P. Morgan Chase Bank, N.A.*, 641 F. App'x 707, 710 (9th Cir. 2016) ("[S]ummary judgment is also appropriate because Plaintiffs cannot show that there is a genuine issue as to the existence of damages."). Accordingly, the Court GRANTS Liberty's motion for summary judgment.

Further, because the Court has concluded that Plaintiff failed to sufficiently demonstrate an entitlement to relief under any of the damages theories Plaintiff asserts, summary judgment is proper as to Liberty Mutual Insurance and Liberty Guard Insurance Company, the nonmoving Defendants whom Liberty asserts have never existed and do not exist.

**IT IS SO ORDERED.**

Dated: September 16, 2019

_____
LUCY H. KOH
United States District Judge

20
Case No. 18-CV-04061-LHK
ORDER GRANTING MOTION FOR SUMMARY JUDGMENT